IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GUSTINE PELAGATTI, SR.,          :    CIVIL ACTION
                                 :    NO. 11-7336
        Plaintiff,               :
                                 :
     v.                          :
                                 :
MINNESOTA LAWYERS MUTUAL INSURANCE :
CO.,                             :
                                 :
        Defendant.               :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    June 25, 2013

        Gustine J. Pelagatti, Sr. (Plaintiff) brings this
action against Minnesota Lawyers Mutual Insurance Co.
(Defendant), seeking a declaratory judgment and damages arising
from allegations that Defendant breached its contractual duty to
defend Plaintiff pursuant to a legal-malpractice policy and
Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371.[1]
Plaintiff and Defendant filed cross-motions for summary
judgment. For the reasons that follow, the Court will grant
Defendant's Motion for Summary Judgment and deny Plaintiff's
cross-motion.

---

[1]      Plaintiff is domiciled in Pennsylvania and therefore a
citizen of Pennsylvania. Notice of Removal 2. Defendant is a
Minnesota corporation with its principal place of business in
Minnesota and therefore is a citizen of Minnesota. Id.

## I.    BACKGROUND

On or around February 4, 2003, Plaintiff purchased a legal-malpractice insurance policy from Defendant. Pl.'s Mot. Summ. J. ¶ 1, ECF No. 14. Plaintiff renewed the policy annually between 2003 and 2010. Pl.'s Mot. Summ. J. Ex. 2, Pl.'s Aff. ¶ 2. Plaintiff completed a Firm Information Verification Form to continue his insurance coverage from Defendant in late 2009. Def.'s Mot. Summ. J. Ex. L, Firm Verification Form. On the form, Plaintiff checked an option that reads:

> There have been changes to the Firm Name, Schedule of Lawyers or significant changes to the previously submitted application information or the firm is aware of a claim(s) or circumstances that could reasonably result in claims or disciplinary actions that have not been reported to Minnesota Lawyers Mutual. The undersigned will provide immediate written notification on this form or an attachment describing the changes, claims, potential claims and disciplinary actions to Minnesota Lawyers Mutual **before accepting the quotation**.

Id. Plaintiff noted on the form that his firm's name had changed, but he did not discuss any potential or outstanding claims. Id.

Plaintiff executed a request to issue insurance coverage after filling out the form described above. Def.'s Mot. Summ. J. Ex. M, Request-to-Issue. Plaintiff's insurance policy (the Policy) was a claims-made policy that became effective on February 1, 2010. Id. The coverage section of the Policy specifies as follows:

WE will pay, subject to OUR limit of liability, all
DAMAGES the INSURED may be legally obligated to pay
and CLAIM EXPENSE(S), due to any CLAIM, provided that:

(1)  the CLAIM arises out of any act, error or
     omission of the INSURED or a person for whose
     acts the INSURED is legally responsible;

(2)  the act, error, or omission occurred on or after
     the PRIOR ACTS RETROACTIVE DATE and prior to the
     expiration date of the POLICY PERIOD;

(3)  the CLAIM results from the rendering of or
     failure to render PROFESSIONAL SERVICES;

(4)  the CLAIM is deemed made during the POLICY
     PERIOD; and

(5)  the CLAIM is reported to US during the POLICY
     PERIOD or within 60 days after the end of the
     POLICY PERIOD.

Def.'s Mot. Summ. J. Ex. P, Policy, at 1. Relevant to this

action, the Policy specifies that a claim is made when "an

INSURED first becomes aware of any act, error or omission by any

INSURED which could reasonably support or lead to a demand for

damages." Id.

On June 18, 2006, Tondalia Cliett's son drowned on an

unsupervised beach in Ocean City, New Jersey (the City). Pl.'s

Mot. Summ. J. Ex. 3, Ocean City Police Incident Report, at 1.

The next month, Cliett retained Plaintiff to represent her in

her own right and as administratrix of her son's estate in a

wrongful death and survival action against the City. Pl.'s Mot.

Summ. J. ¶ 8. At no point during Plaintiff's representation of

3

Cliett was he admitted to practice law in New Jersey.[2] Def.'s
Mot. Summ. J. Ex. B, Pelagatti Dep., at 11:17-20, May 22, 2012.

On September 18, 2006, ninety days after Cliett's
son's death, Plaintiff filed a complaint in the United States
District Court for the District of New Jersey on Cliett's
behalf. Def.'s Mot. Summ. J. Ex. A, Cliett v. City of Ocean
City, No. 06-4368 (JBS), 2007 WL 2459446 (D.N.J. Aug. 24, 2007).
On November 24, 2006, the City filed a motion to dismiss
Cliett's complaint for failure to place the City on notice of
the action as required by the New Jersey Tort Claims Act
(NJTCA). Id. at *6. Plaintiff untimely filed the required Notice
of Claim with the City after receiving the motion to dismiss. He
filed a motion for leave to file a late notice of claim in the
district court a week later. Id. at *2. The district court
converted the City's motion to dismiss into a motion for summary
judgment, granted summary judgment for the City and denied
Plaintiff's motion. Def.'s Mot. Summ. J. Ex. D, Order, Aug. 21,
2007.

Plaintiff then filed a timely motion for
reconsideration; shortly thereafter, he voluntarily withdrew the
motion and instead appealed to the Third Circuit. Def.'s Mot.

---

[2]     The parties dispute whether Plaintiff informed Cliett
that he was not admitted to practice law in New Jersey. Compare
Pelagatti Dep. 14:19-22, and Def.'s Resp. Ex. S, Cliett
Statement, ECF No. 16-1, with Pl.'s Resp. ¶ 2, ECF No. 15.

Summ. J. Ex. C, <u>Cliett v. City of Ocean City</u> Docket, at 3. The
Third Circuit dismissed Cliett's appeal as untimely because
Plaintiff filed it more than thirty days after the district
court's final order. Def.'s Mot. Summ. J. Ex. G, Order, July 13,
2008.

After the Third Circuit dismissed the appeal,
Plaintiff wrote to the district court and asked that it
reinstate Plaintiff's previous motion for reconsideration.
Def.'s Mot. Summ. J. Ex. H, Order, Nov. 13, 2008. The district
court denied Plaintiff's application, saying that Cliett should
have filed a new motion instead of reinstating the original
motion but that she no longer could do so because such a motion
would be untimely. <u>Id.</u> Plaintiff then appealed the district
court's decision to the Third Circuit. Def.'s Mot. Summ. J. Ex.
I, Notice of Appeal. The Third Circuit upheld the district
court's order denying the application. Def.'s Mot. Summ. J. Ex.
J, <u>Cliett v. City of Ocean City</u>, 346 F. App'x 771 (3d Cir.
2009). The next month, Plaintiff informed Cliett by letter that
the appeal was unsuccessful. Def.'s Mot. Summ. J. Ex. K, Letter
from Gustine Pelagatti, Esq., to Tondalia Cliett (Oct. 14,
2009).[3]

---

[3]     After receiving Plaintiff's letter, Cliett visited
Plaintiff at his office. Pl.'s Mot. Summ. J. ¶ 20. A discussion
concerning a potential malpractice lawsuit against Plaintiff
ensued. The parties dispute whether during the visit or at any

On February 3, 2010, Cliett filed a legal-malpractice suit against Plaintiff in her own right and as administratrix of her son's estate in the Superior Court of New Jersey, Law Division, Atlantic County. Pl.'s Mot. Summ. J. Ex. 20, <u>Cliett v. Pelagatti</u> Compl. In her complaint, Cliett alleged that Plaintiff negligently failed to file the required Notice of Claim in her son's wrongful death suit within the ninety-day period required by the NJTCA. <u>Id.</u>

On February 23, Plaintiff's son was served with Cliett's complaint; Plaintiff informed Defendant of the suit a week later. Def.'s Mot. Summ. J. Ex. Q, Email from Gustine Pelagatti, Esq., to Debbie Toberman 1 (Mar. 3, 2010). One of Defendant's claims attorneys, Anne Hill, notified Plaintiff that Defendant declined to defend and indemnify Plaintiff in Cliett's action. Def.'s Mot. Summ. J. Ex. R, Letter from Anne Hill, Claims Attorney, Minn. Lawyers Mut. Ins. Co., to Gustine Pelagatti, Esq. 1 (Apr. 13, 2010). Hill specified that Defendant would not cover Plaintiff because Plaintiff failed to give Defendant timely notice of the claim and because Plaintiff did not notify Defendant of the claim within the relevant claims period. <u>Id.</u> Specifically, Hill pointed out that Plaintiff's

---

time thereafter, Cliett indicated that she would not sue Plaintiff. <u>Compare</u> Pl.'s Mot. Summ. J. Ex. 16, Johnson Dep., at 8:22-9:2, May 22, 2012, <u>with</u> Def.'s Resp. Ex. S, Cliett Statement 2.

claim arose in 2006, when Plaintiff became aware that Cliett's suit was dismissed because of his failure to comply with the relevant statute of limitations. Id. On June 7, 2011, the Superior Court granted summary judgment in favor of Plaintiff in Cliett's legal-malpractice action. Def.'s Mot. Summ. J. Ex. S, Cliett v. Pelagatti Hr'g Tr. 23:9-14, June 7, 2011.

## II.  PROCEDURAL HISTORY

On November 2, 2011, Plaintiff filed the present Complaint against Defendant in the Court of Common Pleas of Philadelphia County. Compl. 1. Plaintiff seeks declaratory judgment and damages based on Defendant's alleged breach of contract and the Pennsylvania Bad Faith Statute, 42 Pa. Cons. Stat. § 8371. Id. On November 28, 2011, Defendant timely removed the case to this Court. Notice of Removal 1, ECF No. 1. On December 5, 2011, Defendant answered Plaintiff's Complaint. Answer 1, ECF No. 5.

On July 9, 2012, Defendant moved for summary judgment. Def.'s Mot. Summ. J. 1, ECF No. 13. Ten days later, Plaintiff filed a cross-motion for summary judgment and responded to Defendant's Motion for Summary Judgment. Pl.'s Mot. Summ. J. 1; Pl.'s Resp. 1, ECF No. 15. On August 10, 2012, Defendant responded to Plaintiff's Motion for Summary Judgment. Def.'s

Resp. 1, ECF No. 16. The matter is now ripe for disposition.

## III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the

8

nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. [4]

Federal courts sitting in diversity generally apply the substantive choice-of-law rules of the forum state, which is Pennsylvania. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Garcia v. Plaza Oldsmobile Ltd., 421 F.3d 216, 219 (3d Cir. 2005). The parties in this case have agreed to apply Pennsylvania law when interpreting the Policy. Def.'s Mot. Summ. J. 4; see Pl.'s Mot. Summ. J. 14. Therefore, to the extent the law of a state other than Pennsylvania would control, the parties waive the issue and Pennsylvania law will apply. See Advanced Med., Inc. v. Arden Med. Sys., Inc., 955 F.2d 188, 202 (3d Cir. 1992); Mellon Bank v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1005 n.1 (3d Cir. 1980).

## IV.  DISCUSSION

Plaintiff moves for summary judgment on multiple grounds: he argues that Defendant waived its defense by failing to comply with the Federal Rules of Civil Procedure and, alternatively, that Defendant did not "prove" that Plaintiff

---

[4]     When presented with cross motions for summary judgment, the Court will consider each motion separately. Jin Mei Lin v. Napolitano, Nos. 11-6373, -6374, 2013 WL 2370588, at *3 (E.D. Pa. May 31, 2013) (quoting Williams v. Phila. Hous. Auth., 834 F. Supp. 794, 797 (E.D. Pa. 1993), aff'd, 27 F.2d 560 (3d Cir. 1994)).

violated the Policy. Plaintiff further argues that Defendant acted in bad faith by refusing to indemnify Plaintiff without justification. Defendant moves for summary judgment on the ground that there is no genuine issue of material fact regarding whether Plaintiff violated the Policy. Defendant further argues that it did not act in bad faith because it acted reasonably in declining to indemnify Plaintiff.

A. Whether Defendant Violated the Federal Rules of Civil Procedure and Waived Its Defense

Plaintiff argues that Defendant waived its right to assert that Plaintiff's failure to report the claim terminated Defendant's duty to cover Plaintiff; he argues that Defendant did not sufficiently plead that issue as an affirmative defense pursuant to Fed. R. Civ. P. 8(c) and 12(b). Pl.'s Mot. Summ. J. 12. A party asserting an affirmative defense must state that defense in its response to a complaint. Fed. R. Civ. P. 8(c)(1). "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Fed. R. Civ. P. 12(b). An affirmative defense need only "provide fair notice of the issue involved"; courts should apply  a low standard when evaluating the sufficiency of an affirmative defense. Tyco Fire Prods. LP v. Victaulic Co., 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011) (Robreno, J.). However, a contractual

10

right to terminate an agreement is a general defense, not an
affirmative defense, because it negates the non-movant's prima
facie breach-of-contract case. Elliott & Frantz, Inc. v.
Ingersoll-Rand Co., 457 F.3d 312, 321 (3d Cir. 2006).[5]

        Plaintiff argues that Defendant did not affirmatively
plead that it properly denied coverage due to Plaintiff's
failure to report the claim within the required time period;
therefore, Plaintiff argues Defendant is barred from raising
such a defense. Pl.'s Mot. Summ. J. 15. In its answer to
Plaintiff's Complaint, Defendant lists, under the section titled
"AFFIRMATIVE DEFENSES," "Plaintiff breached the applicable
insurance policy." Answer 5. This statement sufficiently put
Plaintiff on notice that Defendant intended to argue that it
properly denied coverage due to Plaintiff's failure to comply
with the Policy. Unlike the more stringent pleading requirements
under Rules 8(a) and (b) of the Federal Rules of Civil Procedure
applicable to the complaint and the answer, in pleading an
affirmative defense, Defendant need not specify "precisely how
the issue is implicated under the facts of the given case" in
order to assert an affirmative defense; it need only put
Plaintiff on notice of the general claim. Tyco Fire Prods., 777

_____

[5]        Although, substantively, Elliott & Frantz was decided
under New Jersey law, it clarified that the issue of whether a
contractual right to terminate an agreement has been adequately
pleaded is a matter of procedure that is to be determined under
federal law.

F. Supp. 2d at 901. This Defendant did by referring to the Plaintiff's breach of the applicable provision in the Policy.

But even if the Court did not find that Defendant's answer described the defense with sufficient particularity, however, Defendant's assertion would be allowed as a general defense instead of as an affirmative defense. See Elliott & Frantz, 457 F.3d at 321. Defendant's argument that Plaintiff breached the Policy and was therefore no longer covered negates Plaintiff's prima facie breach of contract case. Plaintiff failed to demonstrate that Defendant waived its defense and so the Court will proceed to evaluate the merits of the parties' respective motions for summary judgment.

B. Construction of the Policy

"The interpretation of an insurance contract is a question of law that is properly decided by the court." Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997) (citing Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983)). The insured party bears the burden of establishing coverage under an insurance policy. Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206 (3d Cir. 2001). Ambiguous terms in an insurance policy should be construed in favor of the insured. Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999); see Minn. Lawyers Mut. Ins. Co. v.

<u>Mazullo</u>, No. 11-1470, 2012 WL 2343308, at *4 (E.D. Pa. June 20, 2012) (Robreno, J.). Exclusionary terms in an insurance policy should be strictly construed against the insurer; however, courts should give clear policy language its intended effect. <u>Selko v. Home Ins. Co.</u> 139 F.3d 146, 152 n.3 (3d Cir. 1998) (citing <u>Standard Venetian Blind Co.</u>, 469 A.2d at 566). Policies using language of "reasonableness" to discuss what an insured must disclose to an insurer create an objective standard with which the insured must comply. <u>See</u> <u>Tr. of Univ. of Penn. v. Lexington Ins. Co.</u>, 815 F.2d 890, 896 (3d Cir. 1987).

Plaintiff argues that the phrase "reasonably support" in the Policy is ambiguous and should therefore be struck. Pl.'s Mot. Summ. J. 23. The Policy reads, in relevant part, that a claim is made when "an INSURED first becomes aware of any act, error or omission by any INSURED which could reasonably support or lead to a demand for damages." Policy 1. To support his position that the clause should be struck, Plaintiff cites a portion of <u>Trustees of the University of Pennsylvania</u>, 815 F.2d at 896 ("Exactly what this 'may reasonably conclude' language required is somewhat unclear. . . . [W]e consider the significance of the term 'may' sufficiently ambiguous to preclude such an onerous interpretation."). However, as Defendant notes in its response, that case actually suggests that language similar to the type found in the Policy creates an

objective test. Id. ("Despite the policy's tortured phrasing, it unambiguously sets out an objective standard for the time at which notice was required."); see Def.'s Resp. 5. The term "reasonably" is not sufficiently ambiguous to require that the Court read it out of the contract.

Furthermore, courts have consistently interpreted clauses such as those in the Policy to impose an objective standard on the insured. See, e.g., Coregis Ins. Co. v. Baratta & Fennerty, Ltd., 264 F.3d 302, 304 (3d Cir. 2001); Brownstein & Washko v. Westport Ins. Corp., No. CIV. A. 01-4026, 2002 WL 1745910, at *1 (E.D. Pa. July 24, 2002); Coregis Ins. Co. v. Wheeler, 24 F. Supp. 2d 475, 476 (E.D. Pa. 1998).[6] Applying an objective standard, the Court determines that the phrase "reasonably support" is not ambiguous. Therefore, the Court will now proceed to determine whether Plaintiff violated the terms of the Policy.


C. Whether Plaintiff Violated the Policy

Plaintiff primarily argues that Defendant failed to show that Plaintiff violated the Policy because Defendant failed

---

[6]     Notably, in 1996, another judge in this District refused to strike very similar language from a prior legal-malpractice insurance agreement between Plaintiff and Mt. Airy Insurance Company. Pelagatti v. Mt. Airy Ins. Co., Civ. A. No. 95-2925, 1996 WL 184474, at *3-4 (E.D. Pa. Apr. 10, 1996).

to "prove" that Plaintiff committed fraud and that it was
prejudiced by Plaintiff's failure to provide timely notice of
his claim. Pl.'s Mot. Summ. J. 16. But Defendant does not argue
that it refused to indemnify Plaintiff because Plaintiff
committed fraud. Instead, Defendant's reason for denying
Plaintiff coverage was that Plaintiff violated the Policy by
failing to notify Defendant of a potential claim. Def.'s Mot.
Summ. J. 3. Accordingly, Defendant need not prove that Plaintiff
engaged in intentional misrepresentation in order to prevail on
its claim that Plaintiff violated the Policy.

        Furthermore, Defendant is not required to show that it
was prejudiced by Plaintiff's failure to provide timely notice
of a potential claim in order to deny coverage under the Policy.
Both parties agree that the Policy is a "claims-made" policy,
and the language of the Policy specifies that it is such. Policy
1. Although Pennsylvania law requires that insurers demonstrate
prejudice in order to deny coverage under some types of
policies, see Brakeman v. Potomac Ins. Co., 371 A.2d 193 (Pa.
1977), the rule does not apply to claims-made policies, Westport
Ins. Corp. v. Mirsky, No. CIV. A. 00-4367, 2002 WL 31018554, at
*10-11 (E.D. Pa. Sept. 10, 2002) (citing Pizzini v. Am. Int'l
Specialty Lines Ins. Co., 210 F. Supp. 2d 658, 668 (E.D. Pa.
2002)). Therefore, the Court will proceed in its analysis of
whether Plaintiff violated the Policy by failing to notify

15

Defendant of a potential claim regardless of whether Defendant was prejudiced.

Whether Plaintiff violated the terms of the Policy by failing to timely report a claim is determined under a hybrid subjective/objective test. <u>Selko</u>, 139 F.3d at 152.[7] Defendant must establish two factors in order to satisfy this two-pronged test: (1) that Plaintiff was aware of a given set of facts; and (2) that a reasonable attorney in possession of those facts would have believed that those facts could support or lead to a demand for damages. <u>Id.</u>; <u>see</u> Policy 1. Under this two-pronged approach, the Court "consider[s] the subjective knowledge of the insured and then the objective understanding of a reasonable attorney with that knowledge." <u>Baratta & Fenerty</u>, 264 F.3d at 306.[8]

_____

[7]     Plaintiff argues that <u>Selko</u> does not apply here because that case deals with "breach of a professional duty." Pl.'s Mot. Summ. J. 24. However, <u>Selko</u> is instructive because it deals with policy language very similar to that at issue in the present case. <u>Selko</u>, 139 F.3d at 153 (discussing policy that required insured to report "any circumstances, acts, errors, or omissions that could result in a professional liability claim against any attorney of the firm"); <u>see also</u> <u>Baratta & Fenerty</u>, 264 F.3d at 307 ("When an attorney has a basis to believe he has breached a professional duty, he has a reason to foresee that his conduct might be the basis of a professional liability claim against him.").

[8]     Plaintiff also argues that <u>Baratta & Fenerty</u> does not apply to this case, suggesting that "the issues were different" because <u>Baratta & Fenerty</u> discusses whether facts can be "reasonably foreseen as a basis for a claim." Pl.'s Mot. Summ. J. 24. While the specific foreseeability analysis may not be

In this case, Plaintiff was subjectively aware that Cliett's initial suit and subsequent appeal were both dismissed on procedural grounds. See Pl.'s Mot. Summ. J. ¶¶ 10, 17; see also Letter from Gustine Pelagatti, Esq., to Tondalia Cliett. Plaintiff was also subjectively aware that he was practicing law in New Jersey without a license to do so. Pelagatti Dep. 13:13-16:13. Plaintiff did not report any of these circumstances to Defendant despite language in the Policy requiring him to report "any act, error or omission by any INSURED which could reasonably support or lead to a demand for damages." Policy 1. Plaintiff's knowledge of the existence of a potential claim at the time he applied for insurance satisfies the subjective component of the Selko test.

Under the objective component of the Selko test, the Court analyzes whether Plaintiff failed to conform to the conduct of a reasonable attorney armed with his knowledge. Language similar to that found in the Policy unambiguously creates an objective standard to which the insured must conform in order to qualify for coverage. The Third Circuit discussed language almost identical to that found within the Policy in Colliers Lanard & Axilbund v. Lloyds of London:

---

germane to this case, Baratta & Fenerty is nevertheless instructive in its discussion of the hybrid subjective/objective test and that test's application to legal-malpractice insurance policies requiring conformity to a reasonableness standard.

> The . . . condition in the exclusion . . . is
> satisfied if the suit, act, error, or omission
> might reasonably be expected to result in a claim
> or suit. This language does not require that the
> insured actually form such an expectation, and we
> conclude that this part of the exclusion gives
> rise to an objective test: whether a reasonable
> professional in the insured's position might
> expect a claim or suit to result.

458 F.3d 231, 237 (3d Cir 2006), aff'd, 337 F. App'x 195 (3d

Cir. 2009). A reasonable attorney would believe that failure to

comply with a statute of limitations could be grounds for a

legal malpractice claim. Wheeler, 24 F. Supp. 2d at 479; see

also Home Ins. Co. v. Powell, No. CIV. A. 95-6305, 1997 WL

370109, at *5 (E.D. Pa. June 13, 1997) ("[F]ailure to timely

file pleadings and to follow local rules of court procedure is a

basis for a reasonable attorney to believe that there was a

breach of that attorney's professional duty to the client.");

United Nat. Ins. Co. v. Granoff, Walker & Forlenza, P.C., 598 F.

Supp. 2d 540, 549 (S.D.N.Y. 2009) ("When an attorney is asked by

a carrier whether he is aware of any legal work that might

reasonably be expected to lead to a claim, he is expected to

answer 'yes' only as to matters that involve a clear breach of

duty, such as the failure to comply with the statute of

limitations."). Evidence that an attorney spoke with his client

about a potential malpractice claim further suggests that a

reasonable attorney would believe that a claim could result from

the underlying action. Wheeler, 24 F. Supp. 2d at 479.

As discussed above, Plaintiff knew that Cliett's claims were dismissed by the district court because of his failure to comply with the relevant statute of limitations, and he knew that his appeal was dismissed as untimely. Also, Plaintiff and Cliett discussed the possibility of Cliett suing him. Pelagatti Dep. 39:14-43:16. Therefore, under the objective component of the Selko test, Defendant was justified in refusing to indemnify Plaintiff because a reasonable attorney with Plaintiff's knowledge of the dismissal of the underlying case would have reported the potential claim when reapplying for insurance.

Plaintiff argues that he acted reasonably because he relied on Cliett's statements that she "just wanted[ed] closure" and had "no intention of suing [Plaintiff]," Pelagatti Dep. 40:15-17, although whether Cliett made such a promise is disputed. But even when viewing this fact in the light most favorable to Plaintiff, his reliance on Cliett's statement does not satisfy the objective prong of the Selko test. See Wheeler, 24 F. Supp. 2d at 475 (citing Mt. Airy Ins. Co. v. Thomas, 954 F. Supp. 1073, 1076 (W.D. Pa. 1997)); see also Brownstein & Washko, 2002 WL 1745910, at *4 (finding that a client's statements may affect an attorney's "subjective understanding of the likelihood of a legal malpractice suit" but not a reasonable attorney's understanding of the facts at hand); Ross v.

<u>Continental Cas. Co.</u>, 420 B.R. 43, 55 (D.D.C. 2009) ("In establishing prior knowledge, there is no requirement that the client complain ahead of time or indicate that it will file a claim against the insured."), <u>aff'd</u>, 393 F. App'x 726 (D.C. Cir. 2010).[9]

Reliance upon a naked statement by Cliett that she "just want[ed] closure" and had "no intention of suing [Plaintiff]" for malpractice is not justified in that such a statement neither foretold nor foreclosed a future malpractice suit by Cliett. This is particularly so where the issue implicates compliance with the statute of limitations. Thus, even if Cliett told Plaintiff that she "had no intention of suing him" for malpractice, such a statement alone fails to show that a reasonable attorney would have been justified in failing to anticipate a future malpractice suit.

Plaintiff had subjective knowledge of the facts and circumstances discussed above. A reasonable attorney with Plaintiff's knowledge would know that those facts and circumstances could support or lead to a malpractice lawsuit. Because Plaintiff breached the terms of the Policy by failing to notify Defendant of the existence of a potential claim,

---

[9]    Plaintiff argues that <u>Trustees of the University of Pennsylvania</u> applies; however, while that case confirms that using the hybrid subjective/objective test is appropriate, nowhere does it address whether an attorney's reliance on his client's statements satisfies the objective prong of that test.

Defendant was not obligated to afford coverage to Plaintiff in Cliett's suit.


   D. Whether Defendant Violated the Pennsylvania Bad Faith
      Statute

         Plaintiff alleges that Defendant violated the Pennsylvania Bad Faith Statute by refusing to indemnify him. Pl.'s Mot. Summ. J. 24. The Pennsylvania Bad Faith Statute reads, in relevant part:

   In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

   (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

   (2) Award punitive damages against the insurer.

   (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371 (1990). To prevail on a claim under the Bad Faith Statute, Plaintiff must prove by clear and convincing evidence that: (1) the insurer lacked a reasonable basis for denying benefits to the insured; and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis for denying said benefits. Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688

(Pa. Super. Ct. 1994). "Clear and convincing evidence is evidence that is 'so clear, direct, weighty and convincing as to enable the [fact finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" Burrell v. United Healthcare Ins. Co., No. CIV. A. 00-4697, 2001 WL 873221, at *1 (E.D. Pa. July 30, 2001) (Robreno, J.) (quoting U.S. Fire Ins. Co. v. Royal Ins. Co., 759 F.2d 306, 309 (3d Cir. 1985)). While an insurer's recklessness can constitute bad faith, mere negligence or bad judgment is not bad faith. Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994); see also Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (holding that insured must ultimately show that insurer breached its duty of good faith through some motive of self-interest or ill will).

Plaintiff focuses his bad-faith argument on the premise that Defendant refused to indemnify Plaintiff because it believed Plaintiff committed fraud. Pl.'s Mot. Summ. J. 25. Plaintiff alleges that Defendant has no proof that Plaintiff committed fraud and that it therefore violated the Bad Faith Statute by refusing coverage. Id. As discussed above, however, Defendant does not contend that it refused to cover Plaintiff because Plaintiff committed fraud; instead, Defendant argues that it was not obligated to cover Plaintiff because Plaintiff violated the Policy by failing to report a potential claim

within the relevant claims period. See supra Part IV.C.
Plaintiff must produce clear and convincing evidence sufficient
for a reasonable trier of fact to find that Defendant lacked a
reasonable basis for believing that Plaintiff violated the
Policy and that it knowingly or recklessly disregarded that lack
of a reasonable basis. See Klinger, 115 F.3d at 233. In other
words, Defendant does not have the burden of demonstrating that
it was correct in its assessment that Plaintiff violated the
Policy; instead, the burden is on Plaintiff to show by clear and
convincing evidence that Defendant had no reasonable basis for
finding as it did. Defendant's inability to demonstrate that
Plaintiff committed fraud is irrelevant to the determination of
whether Defendant acted in bad faith.

Here, Defendant provided Plaintiff with a letter
detailing its reasoning for not indemnifying Plaintiff. See
Letter from Anne Hill to Gustine Pelagatti, Esq. Hill noted
specific provisions in the Policy that Plaintiff allegedly
violated; she also explained which of Plaintiff's actions
constituted violations of the Policy. Id. Plaintiff points to no
evidence rebutting Defendant's reasons for denying him coverage,
and therefore his claim that Defendant violated the Bad Faith
Statute fails as a matter of law.

**V.    CONCLUSION**

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment.